UNITED STATES JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

```
                        )
                        )
                        )
                        )
IN RE:  OPENAI, INC.,   )
COPYRIGHT INFRINGEMENT  )        MDL NO. 3143
LITIGATION              )
                        )
                        )
                        )
                        )
```

TRANSCRIPT OF PROCEEDINGS

March 27, 2025
9:46 a.m.

HELD AT:        United States District Court
                Charles R. Jonas Federal Building
                401 West Trade Street
                Charlotte, North Carolina  28202

BEFORE:         The Honorable Karen K. Caldwell, Chair
                The Honorable Nathaniel M. Gorton
                The Honorable David C. Norton
                The Honorable Dale A. Kimball
                The Honorable Matthew F. Kennelly
                The Honorable Roger T. Benitez
                The Honorable Madeline Cox Arleo

Appearances:

For OpenAI, Inc.; Open AI OpCo, L.L.C.; Open AI GP, L.L.C.; OpenAI, L.L.C.; OpenAI Startup Fund GP I, L.L.C.; OpenAI Startup Fund I, L.P.; OpenAI Startup Fund Management, L.L.C.; OpenAI Global, L.L.C.; OAI Corporation L.L.C.; OpenAI Holdings L.L.C.:

Robert A. Van Nest, Esq.
Keker, Van Nest, & Peters, LLP
633 Battery Street
San Francisco, California  94111

For Microsoft Corporation:    Jeffrey S. Jacobson, Esq.
Faegre Drinker Biddle & Reath LLP
600 Campus Drive
Florham Park, New Jersey 07932

For The New York Times;    Steven Lieberman, Esq.
Daily News, LP, et al.;    Rothwell, Figg, Ernst &
Center for Investigative    Manbeck, P.C.
Reporting:    901 New York Ave NW, Suite 900
Washington, DC 20001

For Raw Story Media, Inc.,    Matthew Topic, Esq.
et al.; The Intercept    Loevy & Loevy
Media, Inc.:    311 N Aberdeen Street, Suite 3
Chicago, Illinois 60607

For Ta-Nehisi Coates; Junot Diaz; Andrew Sean Greer; David Henry Hwang; Laura Lippman; Rachel Louise Snyder; Jacqueline Woodson, Paul Tremblay; Sarah Silverman; Christopher Golden; and Richard Kadrey:

Joseph R. Saveri, Esq.
Joseph Saveri Law Firm LLP
601 California St., Suite 1505
San Francisco, California 94108

For Authors Guild, et al.:    Rachel J. Geman, Esq.
Lieff, Cabraser, Heimann & Bernstein
250 Hudson Street, 8th Floor
New York, New York  10013

Deborah Cohen-Rojas, R.D.R., C.R.R., F.C.R.R.
Official Court Reporter
Deborah_CohenRojas@ncwd.uscourts.gov  704.350.7497
*Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.*

THE COURT:  The panel will now turn to MDL No. 3143, the OpenAI Copyright Infringement Litigation.  Mr. Van Nest.

MR. VAN NEST:  Good morning.  Madam Chair, panel members, may it please the Court.  My name is Bob Van Nest, from Keker, Van Nest & Peters, and I'm here on behalf of the defendant, OpenAI LLC.

This is a very complex set of cases, not only because the technology, artificial intelligence, is brand-new, but the legal issues are novel, as well.  It's also a highly consequential case because OpenAI has the most advanced artificial intelligence technology in the world, and what happens in this case may very well set the course for artificial intelligence in our country and elsewhere.

Right now five district judges and two magistrates are handling the same issues over and over again, and we're asking the panel to fix that situation.  There are really three reasons for that.

One, all these cases have the same core element at their heart, right, that OpenAI improperly used copyrighted material to train the models like ChatGPT.  That's central in all the cases.  And the fair-use defense, which we're asserting, is

also central across all these dozen cases.

Secondly, despite months of efforts, we haven't achieved deposition coordination.  Right now, dozens and dozens of OpenAI employees and formers and Microsoft employees are subject to multiple depositions on the same issues across all these cases.  Our efforts to coordinate voluntarily have failed.

And, third, there's a big potential in this case for inconsistent rulings.  As I mentioned, there are five district judges and two magistrates grappling with the same issues based on the same set of facts in various venues across the country. We need to fix that.

We didn't file this motion until we exhausted all our efforts to coordinate voluntarily.  We spent months and bent over backwards to achieve one result, that there be one deposition across all the cases for each witness.  We offered additional hours, 12 hours, we offered two days.  We have bent over backwards to make this happen.  None of the judges have ordered it, and the plaintiffs won't agree to it.  The plaintiffs have simply refused to agree to that because, apparently, they benefit -- or they think they do -- from multiple opportunities.

Just as one example, there have been four substantive OpenAI depositions to date.  The news plaintiffs in New York attended them, they sat there, they didn't ask questions, and,

as soon as the deposition finished, they sent notices for another deposition of the same witness on the same issues months later.  That is not going to work.  Collectively they have sought testimony from more than 50 OpenAI current and former employees and dozens of Microsoft employees, as well. None of the judges have -- have put a stop to this so far.

Now, the term sheet they sent in here last week is dead, right?  They shouldn't have filed that.  It was a confidential discussion.  No one signed it, no one is planning to sign it, because the New York plaintiffs have said we're not ready to start taking depositions of your 30(b)(6) witnesses for months now, and in California we have a discovery cutoff coming on April 28th.

Depositions have just now started.  Judge Martínez-Olguín in California has set a soft discovery cutoff of April 28. So far we have taken four depositions.  There's another 60 or 70 to go on the defense -- defense witnesses and another 50 plaintiffs, class reps and otherwise, to go.  The case schedules have made this challenging.

Judge Martínez-Olguín wants to stick on her schedule earlier in California.  In New York, there's no schedule for any substantive motions after discovery.  Class cert, the Daubert, summary judgment, none of that has been scheduled to date.

Both class plaintiffs are seeking to amend their

complaints. They're still seeking more custodians. They have many depositions left to go. The parties collectively have designated, disclosed, more than 30 experts. So expert discovery hasn't even begun, and this is an ideal time for the panel to take action and give us a coordinated result. I'll take your questions.

JUDGE CALDWELL: Judge Kimball.

JUDGE KIMBALL: Do you expect any more cases to be filed?

MR. VAN NEST: I don't know, Judge Kimball, but cases have continued to come in. And we've had cases filed as recently as three, four months ago, so I think there's a very good possibility that other news organizations or other websites will file. But it's hard to predict the future.

JUDGE KIMBALL: Thank you.

JUDGE CALDWELL: Judge Kennelly.

JUDGE KENNELLY: There seems to be some connection -- and I know that your side -- that the claims under the Digital Millennium Copyright Act are different in some ways. Can you flesh that out a little bit?

MR. VAN NEST: They are sort of a subset, your Honor, of the -- the main copyright claims attack two things. They attack the use of material to train the models, and in some of the cases they also attack the output. Sometimes they claim there's regurgitation and so on. The DMCA claims are related,

but a little different.  The DMCA claims relate to removing so-called copyright management information in order to facilitate or promote --

JUDGE KENNELLY:  But it all involves the same material --

MR. VAN NEST:  It all involves the same material. It's the same process.

JUDGE KENNELLY:  Yeah, okay.

MR. VAN NEST:  We train the same way and across.

And the one case that's an outlier, now that you mention it, is the Intercept case, which Judge Rakoff has.  That's been set for very early trial in the fall.  But as I said, none of the other cases even have dispositive motions scheduled until 2026.  But Judge Rakoff has advanced that.  That case is a subset, I would say, but many of the same issues will persist, many of the same issues on the plaintiffs' side and defense.

JUDGE GORTON:  What about centralizing the class actions and the news cases, but not including the DMCA and the individual cases?  Wouldn't that be a halfway compromise --

MR. VAN NEST:  Well, you know what, your Honor?  That would be better than where we are now.  It would be a lot better than where we are now.  I do think, though, that there's a lot of overlap between the Intercept case, which is set for trial in the fall, and these other cases.  A lot of the same evidence will be presented, the witnesses are essentially the

same, the defenses are essentially the same.  Fair use will be in play in Intercept.

So I think, if we're going to centralize everything, we ought to include the Intercept case, but your suggestion would be a big improvement over what we have now, where we've got the possibility of dozens and dozens of witnesses, most of whom are in California and Washington, being deposed over and over again because the plaintiffs have refused to coordinate.  That would be a big improvement, yes, your Honor.

JUDGE ARLEO:  This might have been answered, but the discovery, especially depositions for the DMCA case, will that overlap substantially with the other cases?

MR. VAN NEST:  Absolutely.  The witnesses that talk about how ChatGPT was trained are the same.  It's the training that the DMCA is focused on because, during the training, they claimed some CMI was removed.  And that process is the same across all the models that are accused, and the same witnesses will be presented.  So yes.

JUDGE ARLEO:  What about experts?

MR. VAN NEST:  I think the experts will be the same.  As I say, 30 experts have been disclosed so -- in the Intercept case, it will be a smaller number.  But I know on our side, at least, a lot -- there are not a lot of well-experienced, willing experts in this field.  So both sides have, I think, struggled to get people to do that.  And I think some of the

same experts will be in the Intercept case that we have in the other copyright cases, too, your Honor.

JUDGE ARLEO:  Thank you.

JUDGE KIMBALL:  Which cases are set for the fall for trial?

MR. VAN NEST:  It's actually the way Judge Rakoff does it, Judge Kimball.  He sets a trial-ready date, which is late September, and then he sets a pretrial, which is early October, and then, at that pretrial, he sets the trial.  And sometimes the trial follows by a month, and sometimes it follows by longer depending on Judge Rakoff's calendar.  But we have a trial-ready date in Intercept -- that's the only case with a trial date -- in late September and a pretrial in early October.  That's how he does it.

JUDGE CALDWELL:  Other questions?  Hearing none, we thank you for your argument.  You have reserved a minute for rebuttal.

MR. VAN NEST:  Thank you, your Honor.

JUDGE CALDWELL:  Mr. Jacobson.

MR. JACOBSON:  May it please the panel, Jeffrey Jacobson, Faegre Drinker, on behalf of Microsoft.

Your Honors, when my two minutes are done, you're going to hear from my friends on the other side, and the problem that they're going to face is the two arguments they made in opposition to centralization are, number one, Microsoft, my

client, is not a party to the California case, and, number two, this will all be fine by the time we see you in March.

Microsoft has now sought to be made a party in California. And even if that motion is denied, which we hope it is, we've been served with a massive subpoena in California.  So we're in California one way or the other.  And as for the argument this is all going to be fine, it's not fine.  It has not -- it's, in some ways, gotten worse.

We've made significant progress on document discovery, but, as Mr. Van Nest said, deposition coordination is essentially nowhere.  But, more importantly, at least one jurist is going to have to get very acquainted with the way large-language models work, the way these models were trained. These are very complicated issues of fair use under copyright law.  And as Mr. Van Nest said, there are 30 experts that have been disclosed.  There are going to be very complicated Daubert motions.

Right now the cases are on two different tracks because in New York, under Second Circuit law, summary judgement must go before a class certification.  We think that makes a lot of sense.  We think the Second Circuit, when they looked at this in the Authors Guild case a number of years ago, got it right.

In California right now, class certification is going first, which, you know, that's going to -- that's got these cases on two tracks, which doesn't make a whole lot of sense.

There are going to be very complicated -- as I said, there are going to be very complicated Daubert motions.

You know, our position is that it -- this should really be one judge.  It's very hard to understand why it shouldn't be one judge, and our friends on the other side have not said why it makes sense for multiple judges on both coasts to be diving under these very complicated issues.

As my time is just about up, let me open myself up for questions.

JUDGE CALDWELL:  Questions?

JUDGE KIMBALL:  Do you have a preference for California or New York and, if so, why?

MR. JACOBSON:  Your Honor, what we stated is we have a preference for a jurist that has experience in MDLs and, in particular, with copyright and fair use.  We are venue agnostic about where it should go.  We just want to -- we want somebody who's going to exercise some real supervision over this.

JUDGE KIMBALL:  Thank you.

JUDGE BENITEZ:  So which would be more efficient as far as witnesses and parties to appear at?

MR. JACOBSON:  Your Honor, OpenAI has expressed an preference for the Northern District of California.  Microsoft, my client, is okay with that.  We're based in Washington.  If it's going to be the Northern District of California, we would hope that the court would find us a judge who has MDL

experience and experience in this area.  So we're okay with the Northern District of California, we're okay with venues in California.  You know, it's -- we're a West Coast company, so we're fine with a venue --

JUDGE BENITEZ:  Is that because you think that's the most efficient forum?

MR. JACOBSON:  I -- I -- in -- it's a close call.  I mean, I'm a New Jersey guy practicing in New York, but I'm perfectly happy to get on a plane.  There's a lot of very high-powered lawyers on both sides of this.  It's a multi-decabillion-dollar dispute.  The where is much less important than the who in my opinion.

JUDGE CALDWELL:  Any other questions?  Thank you for your argument.

MR. JACOBSON:  Thank you, your Honors.

JUDGE CALDWELL:  Mr. Saveri.

MR. LIEBERMAN:  Steven Lieberman, your Honor.  We agreed on a different order with the clerk this morning.

JUDGE CALDWELL:  All right.  Very well.  Yes, I see. Thank you.

MR. LIEBERMAN:  Steve Lieberman, from Rothwell Figg. I represent The New York Times company, the Daily News plaintiffs, and I'm also speaking on behalf of the third news plaintiff, the Center for Investigative Reporting.  These are three cases that have been consolidated before Judge Stein in

the Southern District of New York.  May it please the Court, I want to address the points that Mr. Van Nest raised immediately.

First, while there are some similarities between these cases in that they relate generally to GAI products -- general artificial intelligence -- and they're against OpenAI, there are scores and scores of important differences.

The cases in California largely relate to lawsuits on behalf of authors who have written one or two books.  The newspaper cases relate to millions of articles having been scarfed up by OpenAI.

And the newspaper cases also don't just relate to the issue of training.  They relate to the output of the content from their products and something called Retrieval-Augmented Generation, which is essentially real-time news.  Somebody types in, "Who won the Chicago White Sox baseball game last night," "What did Elon Musk do yesterday," and you get a summary, for example, of Chicago Tribune or New York Times articles.  That's not something that comes up in those cases.

There are special efforts that OpenAI made to select the most valuable content to train their products, newspaper content, New York Times content, Chicago Tribune content.  They trained and they retrained their products on that.  There are issues of hallucinations, which gave rise to the trademark-dilution claims, which Judge Stein allowed to proceed

in his order yesterday.  There are a whole variety of issues that have nothing to do with the training as it has to do with text in general.

There aren't five judges who are dealing with these issues.  In the Southern District of New York, the three news cases have been consolidated in front of Judge Stein.  The discovery is being handled by Magistrate Judge Wang.  The New York class action cases are also in front of Judge Stein and Judge Wang.

Judge Wang has been dealing with discovery issues in this case, which are exceedingly complex.  We're dealing, in the news cases, for example, with training logs and output logs that involve petabytes of information.  Those are millions and millions of filing cabinets.  Judge Wang has held four multi-hour conferences where she supervised the protocols -- the protocols for examining those, for doing discovery, what has to be produced and how.

Let me turn, because I see the yellow light is on, to the deposition coordination.  The deposition-coordination protocol is not dead.  It was virtually and entirely agreed upon at a conference supervised by Judge Wang.  There were a couple of little issues left, and our view is that OpenAI blew up the protocol in anticipation of this hearing so that they could say just what they said to the Court.

There's a dispute between the parties on one or two

issues, and there's a dispute between the parties as to how big that dispute is, but the appropriate person to resolve that is Magistrate Judge Wang, who has supervised those conferences and dealt with the parties for the last year.

JUDGE CALDWELL:  Your time is up.

Questions?  Judge Benitez.

JUDGE BENITEZ:  So, counsel, you said in your argument that there are cases that -- let's see -- don't also relate to training.  I assume, by that statement, that you are agreeing or in agreement with the fact that there is a common question of fact, and that is the idea of training, how the training took effect.  And that cuts across all of the cases, doesn't it?

MR. LIEBERMAN:  The answer is no.  There's -- there is a question of training in all the cases, but it's not a common question of fact.  So -- and let me explain why.

JUDGE BENITEZ:  Please.

MR. LIEBERMAN:  The principle defense that the defendants are going to have in this case is a fair-use defense.  The United States Supreme Court in Google versus Oracle, at page 20 of the decision, 593 U.S. 1, said fair-use defense is an exceedingly fact-specific defense, and the factors on which one decides fair use, the most important factor the courts have found, is the fourth factor, which relates to the potential substitution of the -- of the

copyist's product for the products that have been copied.  That is a completely different issue.  The fair-use analysis is completely different.

In terms of copying for training, we're dealing -- for example, with the New York Times, they copied four-million-plus articles, as opposed to copying, for the book plaintiffs, one book, two books.  Completely different issues.  And not only did they copy for training, they recopied multiple times.  They copied it in a way that would cause the machine to memorize and then regurgitate New York Times and Daily News content.

So the facts are very, very different.  There's a -- you know, the general similarity, there is training in both, but the facts are very, very different.  And having multiple judges deal with, for example, the fair-use issue is not a problem because, again, it's very fact-specific to the particular case.

And by the way, there are now 38 cases around the country against a dozen or more artificial intelligence entities -- Meta, Perplexity, entities like that -- that are going on right now.  So Mr. Van Nest says that somehow this is going to be a panacea, we'll have one judge who will resolve every artificial intelligence case.  There's not true.  There are 38 of them right now.

JUDGE CALDWELL:  Judge Gorton.

JUDGE GORTON:  So, again, why not centralize the class actions under the news cases, but not the DMCA and the

individual cases?

MR. LIEBERMAN:  So the class action -- well, first of all, the class action cases -- the ones in the Southern District of New York, I understand, are on behalf of authors of books.  Very, very different.

And by the way, if you want to centralize all of those together in the Southern District of New York, where Judge Wang has been working on this for a year and has held multiple hearings and Judge Stein has resolved issues, we don't have a problem with that if you believe that it needs to be done.  The -- but there are tremendous differences, again, factual differences.

And in terms of depositions, you asked about centralization, why not centralize them?  Right now the dispute between the parties is, do OpenAI witnesses get deposed once or do they get deposed once or maybe twice?  Because all these Southern District of New York entities, all of the Southern District of New York plaintiffs, have agreed that, for 30(b)(1) witnesses, we will try to take those depositions at the same time that they're taking place in California if scheduling permits.  The 30(b)(6), we will do the same thing so long as they substantially complete document production with respect to the topic as to which that witness has been designated.  Not an unreasonable request.  So is it going to be one deposition or two?

By the way, there was reference to 30 experts.  There are no 30 experts in this case.  Most of those, probably 20 or more, are people who were identified under the protective order just so that they could look at these repositories of code, to help with the code.

This case has been handled very well in the Southern District of New York by Judge Stein and Magistrate Judge Wang. We'd ask you leave it there.  If you consolidate in California, if you take it away from Magistrate Judge Wang and Judge Stein, we're going to be starting this very complicated discovery process all over again.  And your Honors know --

JUDGE CALDWELL:  Thank you.

JUDGE KENNELLY:  I just need to say this.  I don't need AI to tell me who won the White Sox game last night.  As a fan, I know it wasn't the White Sox --

(Laughter.)

JUDGE KENNELLY:  -- but it's pretty common for us, not in this -- necessarily in this context, but let's say in a mass drug context -- to have the exact same situation you're talking about, lots of different facts, different doctor, took the drug for a different amount of time, different injuries, and so on, and we still centralize cases like that.  Are you saying -- are you saying that there's nothing -- there's no common issue in fact that cuts across all these cases?

MR. LIEBERMAN:  Obviously there are some, but we think

they are far outweighed by the differences.

And remember, we've been dealing for a year now with discovery of OpenAI and Microsoft.  We've been dealing with discovery about this for a year in the Southern District.  If this case goes to California, the California courts have no experience with discovery --

JUDGE KENNELLY:  I wasn't asking you about where.  I'm just asking you about whether --

MR. LIEBERMAN:  There is a modest overlap between the newspaper cases.  The facts that are different vastly outweigh the facts that are the same.

JUDGE KENNELLY:  All right.  Thanks.

JUDGE CALDWELL:  Anybody else?  Judge Benitez.

JUDGE BENITEZ:  Very quickly.  So I guess the answer to my question originally was that there are common questions of fact.  Right?

MR. LIEBERMAN:  I would say de minimis, but there are some.

JUDGE BENITEZ:  De minimis, but there are some.  Right.  And then I guess your suggestion is that, if it's going to be centralized, that it be centralized in New York, not in the Northern District of California.  Do I have that right?

MR. LIEBERMAN:  That's correct.

JUDGE BENITEZ:  Great.  Thank you.

JUDGE CALDWELL:  All right.  Any other questions?

Thank you for your argument.

MR. LIEBERMAN:  Thank you, your Honors.

JUDGE CALDWELL:  Mr. Topic.

MR. TOPIC:  Good morning.  Matt Topic, from Loevy & Loevy.  I'm also from Chicago.  Judge Kennelly stole my joke about the White Sox.  I represent Intercept and Raw Story, who we've been calling the DMCA plaintiffs.

OpenAI is correct.  The scope of the case is narrower.  In fact, they disclosed about half of the main witnesses and much fewer subjects in their Rule 26 disclosures.  They're also correct we have a September 29th, 2025, ready-for-trial date in front of Judge Rakoff.  We fully expect to meet that.

We are already informally coordinating depositions and document discovery with the other cases, both the California and New York cases.  We'll be basically piggybacking on those depositions as they occur, and that will be beginning -- within two weeks, those will be -- those will be starting.

And just the final point I'll make on experts is, to my knowledge, there is no overlap in experts between our experts and the experts in the other cases for the other plaintiffs.  I presume OpenAI probably will have some overlapping experts there, but we do not.  And with that, I'm happy to take any questions.

JUDGE CALDWELL:  Questions?

JUDGE KIMBALL:  Apparently, there are two people in

the room who care who won the White Sox game.

JUDGE KENNELLY:  I didn't say I cared.  I said I knew.

(Laughter.)

JUDGE BENITEZ:  I care.

JUDGE CALDWELL:  Any other questions, baseball-related or not?

Thank you very much for your argument.

Mr. Saveri.

MR. SAVERI:  Good morning.  I'm Joseph Saveri from San Francisco, California, on behalf of the Northern District of California plaintiffs.  So first, let's talk about how we got here.

First, OpenAI was for consolidation and coordination when they agreed with us in support of our first-to-file motion. Then they were against it when Judge Martínez-Olguín entered a pretrial schedule in our case that they didn't like.  And now they're for it again now that the cases are proceeding and depositions have been scheduled.

So we've got -- we've gone 360 degrees on this.  And why is that?  I think there are really two apparent reasons.  One, I think that the -- that OpenAI is trifling with these issues of centralization in order to serve their strategic interests. And I think, candidly, they're forum shopping and looking for the best judge.  And that's actually what's going on here.

All of the issues with -- that we've been hearing about

with coordination and the problems we've been having are entirely hyperbole at this point from my perspective. The only reasons we're not coordinating is because OpenAI is refusing to do that.

We have taken a number of depositions in this case. We've proceeded with those depositions in coordination with the Southern District of New York plaintiffs. We've reached agreements on time. We're not duplicating depositions for any particular witnesses. We are exchanging document productions in cases. We are cross-noticing third-party depositions. All of that is happening.

So the panel has consistently recommended that the parties try to organize this privately, and that's exactly what's happened here. And I think it would be a mistake to send the wrong message that, now that we've tried that and largely achieved that, we are going to unwind that.

And so I think it's working. We have a discovery cutoff in our case in less than -- in about six weeks. We certainly want to meet that. We want to comply with the pretrial schedule we've had in this case. And we wouldn't want anything about these panel proceedings to disrupt them.

JUDGE CALDWELL: Thank you.

Questions?

JUDGE ARLEO: So you said you're going to be wrapping up discovery in six weeks. How many depositions have you taken

to date?

MR. SAVERI:  We've taken -- there have been four depositions of defendants.  There have been two of our plaintiffs.  The rest of the schedule is -- we have dates --

JUDGE ARLEO:  How many are left to take?

MR. SAVERI:  I believe, of the parties, about somewhere around 20.

JUDGE ARLEO:  Twenty in six weeks?  And how many nonparties?

MR. SAVERI:  I think that there will be probably another 10 to 20 parties, but we also --

JUDGE ARLEO:  So 40 depositions in six weeks, that's the goal?

MR. SAVERI:  It is the goal.

JUDGE ARLEO:  Is that a realistic goal?

MR. SAVERI:  Is it a -- excuse me?

JUDGE ARLEO:  A realistic goal.  I mean, you make it sound like discovery is already done, almost done, in six weeks.  You've taken four?

MR. SAVERI:  Yes.

JUDGE ARLEO:  And you have 30 to take -- you have 40 to take?

MR. SAVERI:  And, your Honor, we're -- this is an important case with lots of lawyers.  We're prepared to take -- to double-track the depositions.  Now, part of the reason we

haven't been able to space those depositions out is because OpenAI is unwilling to do that. They are forcing us into that. But this is an important case with lawyers who are willing to prosecute this case, so we're willing and prepared to do that.

JUDGE ARLEO: Thank you.

JUDGE BENITEZ: So what's the downside of centralizing?

MR. SAVERI: The downside to centralizing at this point would be that, after we've done all this work and we've spent all this time and effort chasing OpenAI -- and we've finally gotten a discovery schedule that works, we've produced documents, and we're well on our way -- to have the centralization process set that back.

There's something fundamentally unfair about having asked for this from our perspective in the first place, OpenAI resisting that, and then we went about trying to coordinate with the other lawyers throughout the country and have been largely successful. And now to have that unwound, I think, is profoundly unfair and contrary to the interests of justice from our perspective.

JUDGE ARLEO: Have you served expert reports?

MR. SAVERI: No -- no -- no, your Honor. We -- we -- to address the expert issue, because this is a highly technical case, the protective order requires that, in order for experts to review the documents, we have to designate them and give the

opportunity to the other side to say we object. We haven't come to the expert disclosure, the Rule 26 disclosure, process.

JUDGE ARLEO: When is that contemplated by your schedule?

MR. SAVERI: In another two or three months, after the -- the way that the discovery is set off is that there's percipient witness discovery and then, following that, the experts. So the experts will -- the experts will come after that.

JUDGE CALDWELL: Other questions?

MR. SAVERI: I guess I would say that, if -- if -- there are common issues in this case. I want to be very clear about that. I -- Judge Benitez, I agree with you that there are over-arching, common issues in this case. There's no doubt about that in my mind. I just think, given where we are and given the contrary position that the movant has taken, we should be allowed to do what Judge Martínez-Olguín said, which is they made their bed and now they -- and so, at some level, they should -- they should -- they should deal with the consequences of that.

JUDGE CALDWELL: Thank you for your argument.

MR. SAVERI: If we're going to be centralized in New York, we would be okay -- we would support Judge Rakoff. If I had a second choice --

JUDGE CALDWELL: Thank you for your argument.

MR. SAVERI:  Thank you.

JUDGE CALDWELL:  Ms. Geman.

MS. GEMAN.  Thank you.  Good morning, your Honors. Rachel Geman, Lieff Cabraser, for he New York class plaintiffs. I realize I'm last for the plaintiffs.  I won't repeat what my colleagues said about how the, in fact, small cases in courts are collectively and efficiently availing themselves of coordination options.

And I agree with their level set on depositions.  We, the New York class plaintiffs, have joint depositions with our friends in the Northern District of California.  And, you know, given our frankly unremarkable insistence on getting documents before depositions, which will be happening soon, we will also be joining with the news plaintiffs.

I did want to note that, in addition to the other points made, we have been operating under a stipulation for more than a year, pursuant to which defendants expressly agreed not to seek centralization.  Now, this was a negotiated thing, and it's not because -- with all respect to Microsoft counsel, it's certainly not the law in the Second Circuit that summary judgement comes first, but, indeed, was an agreement we reached.

In the wake of that -- but what's relevant for this court, which is focused not on private agreements, but on efficiency, in the wake of that agreement, we have been working

cooperatively to achieve non-duplication short of centralization.  And in the wake of that agreement, there was briefing by multiple judges that have rejected the exact arguments that defendants are making now.

We consider that the clock is really wound on the schedule as it is.  We certainly do like -- and Mr. Saveri has acknowledged there are common issues, but we also note that, you know, the fair-use defense is fact-specific and use-specific.

Your Honors have asked about why not centralize the news and class cases.  Just to set the table a bit, most of the news and class cases are already coordinated in the Southern District of New York, our case, which represents authors against Microsoft and OpenAI, and the news cases.

The vast majority -- this is not surprising given the industries -- the proceedings against Microsoft have been proceeding for a year and more.  It is -- if there is centralization, we respectfully submit that the SDNY is the logical place because, you know, there's a marginal difference between what there is now and what there would be with these small -- and we are all sophisticated counsel who could --

JUDGE CALDWELL:  Your time is up.

MS. GEMAN:  Thank you.

JUDGE CALDWELL:  Judge Kennelly.

JUDGE KENNELLY:  You said that the fair-use defense

is -- you said fact-specific and use-specific, but wouldn't the various groups of content produced here fall into categories? I mean, it's not 10,000 fact-specific things, right?

MS. GEMAN:  No, it's not 10,000 fact-specific things, but it is worth, perhaps, underscoring that in the New York case we represent authors with registered copyrights, and we are focused on training.  You know, there's use issues about illegal acquisition, there's use issues about training.  And then I believe Mr. Lieberman talked about some of the new specific issues.  So certainly it's not 10,000 --

JUDGE KENNELLY:  Seems like it's a limited number of buckets, though.

MS. GEMAN:  I think it is -- I think it is a limited number of buckets, but I think that's perfectly reflected in the current status, where we have related, not centralized, cases, and we are working very cooperatively.  I think, given the current status quo, it's capturing it.

JUDGE CALDWELL:  Thank you.  Other questions?  Hearing none, we thank you for your argument.

And, Mr. Van Nest, you have one minute.

MR. VAN NEST:  Thank you, your Honor, and panel members.  I think you have cleared out most of the issues. Judge Kennelly and Judge Benitez smoked it out.  Training is all they're complaining about, and that's a common issue across all these cases.

This case is not well-advanced at all.  Judge Arleo hit the nail on the head.  Both class plaintiffs are seeking to amend their complaints to add parties and to add claims.  Both class plaintiffs and the news plaintiffs are seeking a minimum of 60 more days to complete discovery because, as Judge Arleo pointed out, you can't get it done in the time we have.

These cases should be centralized so we don't have the chaos of five different district judges and two magistrates. We won't lose the work of Judge Wang.  She's limited discovery. Both sides have gotten rulings that helped and hurt their cases.  That's right, she's been working hard, but this case should be centralized in California.  Why?  Everything that happened, happened there.  All the companies are there. Microsoft is there, OpenAI is there, all the witnesses are there, the third parties are all there.  This technology is being developed there, that's where it's happening, and that's where all the witnesses are in existence today and for the foreseeable future.

JUDGE CALDWELL:  Judge Kennelly.

JUDGE KENNELLY:  So a lot of shade got thrown your client's way on this whole thing about changing positions and making your bed and having to sleep in it.  Can you just sort of briefly respond to that?

MR. VAN NEST:  Sure.  When we first considered coming, there were only three cases, and they were -- they were kind of

similar.  We felt that, with that kind of situation, the panel guidance would be try to get voluntary coordination before you come here.  I've read many cases where you turn it down because people didn't try.  We tried.  We tried like crazy.

We've had months of negotiations, months of trying to get -- we've bent over backwards.  We asked for a single deposition per witness across all cases.  We offered two days for the witnesses, 12 hours.  We said -- we just -- we don't want witnesses coming back and back and back.  And they refused.  They walked away.  We thought we could get a deal; we didn't.  And now the first four depositions proved my point.

JUDGE KENNELLY:  So the short answer is that circumstances are different from when you --

MR. VAN NEST:  Very different.  We tried for months, your Honor, and to no avail.

JUDGE KENNELLY:  Thanks.

MR. VAN NEST:  And now we're asking -- we came reluctantly because we thought early on we could get coordination.  We always carved out the right to seek centralization if circumstances changed and more cases were filed, which they were, and cooperation was not forthcoming. We absolutely reserved --

JUDGE CALDWELL:  Other questions?

Thank you.

MR. VAN NEST:  Thank you, panel members.

JUDGE CALDWELL:  That concludes the arguments in MDL No. 3143.

(Time noted:  10:22 a.m.)

C E R T I F I C A T E

I, DEBORAH COHEN-ROJAS, Federal Official Court Reporter for the United States District Court for the Western District of North Carolina, a Registered Diplomate Reporter, Certified Realtime Reporter, and Federal Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the foregoing proceedings contained herein on the aforementioned subject on the date herein set forth, and that the foregoing pages constitute a full, true and correct transcript.

Dated this 28th day of March, 2025.


_____

DEBORAH COHEN-ROJAS
RDR, CRR, FCRR
Federal Official Court Reporter